Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2414 | **DATE** | 9/11/2003 |
| **CASE TITLE** | WELLS FARGO BANK NW vs. UAL CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. The February 7, April 16, and April 18, 2003 orders of the bankruptcy court are not appealable; and, therefore, these appeals are dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | SEP 1 5 2003 date docketed |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| LG | courtroom deputy's initials | date mailed notice |

Document Number 18

U.S. DISTRICT COURT CLERK
03 SEP 12 PM 5:09

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BA LEASING PARTIES; AT&T CREDIT )
HOLDINGS, INC.; BANC OF AMERICA )
VENDOR FINANCE, INC.; BANC OF )
AMERICA LEASING & CAPITAL, LLC; )
DFO PARTNERSHIP; LONE STAR AIR )
PARTNERS, LLC; USWFS INTERMEDIARY )
TRUST; BANC OF AMERICA COMMERCIAL )
FINANCE CORPORATION; PACIFIC )
SOUTHWEST REALTY COMPANY; BANK )
OF AMERICA, N.A.; WELLS FARGO BANK )
NORTHWEST, N.A., )
)
      Appellants, )
)
      v. )
)
UAL CORPORATION, )
)
      Appellee. )

DOCKETED

SEP 1 5 2003

Case Nos. 03 C 2232 & 03 C 2414

Honorable John W. Darrah

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal of several orders of the bankruptcy court

by BA Leasing Parties; AT&T Credit Holdings, Inc.; Banc of America; Vendor Finance, Inc.; Banc

of America Leasing & Capital, LLC; DFO Partnership; Lone Star Air Partners, LLC; USWFS

Intermediary Trust; Banc of America Commercial Finance Corporation; Pacific Southwest Realty

Company; Bank of America, N.A.; Credit Lyonnais; and Credit Lyonnais Leasing Co. LP

(collectively "the Aircraft Finance Parties"); and Wells Fargo Bank Northwest, N.A. ("Wells

Fargo"). For the reasons that follow, these appeals are dismissed.

## BACKGROUND

On December 9, 2002, United Airlines and certain of its affiliates (collectively "United")



filed voluntary petitions under Chapter 11 of Title 11 of the United States Code, which were

consolidated by the bankruptcy court. At the time it filed its bankruptcy petitions, United had a fleet

of 567 aircraft, 463 of which were leased from or financed by various secured creditors. United

sought to negotiate with its creditors to lower its lease rates and financing costs and to prevent

repossession of its aircraft.

On January 29, 2003, United filed an emergency motion, seeking authorization to enter into

stipulations pursuant to 11 U.S.C. § 1110(b)[1] and to file such stipulations under seal pursuant to 11

U.S.C. § 107(b)[2]. Several parties, including the Aircraft Finance Parties and Wells Fargo

(collectively "Appellants"), objected to the portion of that motion that sought approval to file the

stipulations under seal, asserting that (1) the stipulations did not contain "confidential commercial

information" and (2) the public has the right to view these judicial records.

On February 6, 2003, after a hearing on the January 29, 2003 emergency motion, at which

there was testimony by a witness and oral argument by the parties, the bankruptcy court found that:

> [it was] convinced that the procedures that have been suggested by the debtors, with the modifications . . . announced in the colloquy that's taken place, ought to be approved.
>
> We are in a situation where the debtor may have greater information concerning the market than the parties with whom the debtor is negotiating. That strikes me as not an uncommon situation in the marketplace.

---

[1] Under § 1110, a debtor that leases aircraft can (1) agree to perform all obligations under the lease within sixty days of the commencement of bankruptcy proceedings and cure certain defaults within certain specified time periods or (2) the debtor and the lessor can agree to extend the statutory time period to enter into agreements to avoid repossession of the aircraft. Agreements under § 1110 must be approved by the bankruptcy court. 11 U.S.C. § 1110(a), (b).

[2] Section 107 provides that "[o]n request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . ." 11 U.S.C. § 107(b)(1).

A dealer in antiques, for example, may have greater knowledge regarding the market than the customers with whom that dealer engages in transactions.

The relative ignorance of the purchasers, in that context, operates to the advantage of the seller. And United may very well be in a similar situation here, where its greater knowledge of the market operates to its advantage.

That essentially is the testimony that . . . [was] given. That essentially is the position that the creditors' committee has enunciated.

It is certainly true that when a debtor is in the position of selling an asset, that the Bankruptcy Code goes to great lengths to assure that the debtor offers that asset to the market as widely as possible in an attempt to get the best price it can.

The debtor is not in that situation here.

It's the judgment of the debtors' professionals that by keeping its transactions in essentially purchasing assets confidential, the debtor will be able to effect those transactions at the most economical price to the benefit of the estate.

I see no reason to doubt the exercise of the business judgment that the debtor, its professionals, and the creditors' committee have arrived at and the testimony we have heard today confirms.

On that basis, then, the debtors' motion will be granted, subject to the right of each holder of an interest in a particular aircraft to be given the 1110 process by the debtor, subject to a confidentiality agreement that it will not disclose that information to other parties.

(Feb. 6, 2003 Tr. at 168 ll. 7-25 to 169 ll. 1-23.) During the hearing on February 6, 2003, United

requested that it be permitted to enter into further agreements without having to seek the bankruptcy

court's approval of each individual agreement. The bankruptcy court also granted this request,

reasoning that:

the modification that the debtors have asked for in terms of the approval process for 1110(b) stipulations, it strikes me that the change that was made in the order proposed originally, and now proposed, is not a significant change.

Since the original order imposed no deadline on the debtors to seek a court hearing, having the order remain valid unless it's challenged by someone imposes no particular obligation on the parties who might be interested in challenging a particular 1110 stipulation.

The debtor could have waited until such time as it chose either to engage in an 1110(a) motion or to effectively give up its rights in the aircraft equipment in question before the 1110(b) stipulations were ever addressed.

That being the case, there is no significant harm to parties who would claim an interest in the equipment in issue, having them come forward to object to any particular stipulation.

So with that understanding, and with the modification that we have just discussed, the debtors' motion will be granted . . . .

(Feb. 6, 2003 Tr. at 170 ll. 8-25 to 171 ll. 1-4.) On February 7, 2003, the bankruptcy court entered an order ("the February 7th Order") authorizing United to enter into the agreements and to file such agreements under seal.

In April 2003, United moved for authorization to enter into and redact portions of an Adequate Protection Stipulation with certain creditors. After a hearing on April 16, 2003, the bankruptcy court granted United's motion ("the April 16th Order"). United also moved, pursuant to § 1110(b), for another extension of the statutory period with regard to certain aircraft and for leave to file such extension agreements under seal because it believed that disclosure of the agreements would enable its competitors to use the information contained in the agreements to United's disadvantage. Several parties, including the Appellants, objected to the filing of these extension agreements under seal, arguing that, as creditors of United's bankruptcy estate, they had a right to review such agreements. On April 18, 2003, the bankruptcy court entered an order ("the April 18th Order") authorizing United to enter into the extension agreements and to file those agreements under seal.

The Aircraft Finance Parties then appealed the bankruptcy court's ruling to this Court, raising the following issues for review:

1. Did the [b]ankruptcy [c]ourt abuse its discretion by failing to follow the doctrine enunciated in *[In re Krynicki*, 983 F.2d 74 (7th Cir. 1992); *In the Matter of Continental Ill. Sec. Litig.*, 732 F.2d 1302 (7th Cir. 1984)], and their progeny, holding that the public must have access to documents that a court uses to make a determination on the merits?

-4-

2. Did the [b]ankruptcy [c]ourt improperly apply 11 U.S.C. § 107(b), which was intended to protect trade secrets and confidential commercial information and not to enable debtors to conceal key terms of agreements subject to bankruptcy court approval?

3. Even if some of the information contained in the Agreements is considered confidential commercial information under 11 U.S.C. § 107(b), did the [b]ankruptcy [c]ourt abuse its discretion by failing to consider a less restrictive alternative than sealing the entirety of the Agreements?

4. Did the [b]ankruptcy [c]ourt err in authorizing United to enter into agreements, without first reviewing the terms and conditions of such agreements?

(Aircraft Finance Parties' Opening Br. at 3.)

Wells Fargo also appealed the bankruptcy court's ruling to this Court and raised the following issues for review: Whether the bankruptcy court erred by permitting United to file certain materials under seal when (1) United failed to submit sufficient evidence demonstrating that such materials were "commercial information" or otherwise subject to protection, (2) the bankruptcy court failed to make the necessary factual findings as to whether such materials were "commercial information" or otherwise subject to protection, (3) the bankruptcy court applied an inappropriate standard in determining whether to permit United to file such materials under seal, and (4) the information sealed was material to investors in United's publicly traded securities. (Wells Fargo's Opening Br. at 1.)

On June 17, 2003, *Wells Fargo Bank Northwest N.A. v. UAL Corp.*, Case No. 03 C 3908, was consolidated with Case No. 03 C 2414. On June 24, 2003, *Aircraft Finance Parties v. UAL Corp.*, Case No. 03 C 3906, and *AT&T Credit Holdings, Inc. v. UAL Corp.*, Case No. 03 C 3907, were consolidated with Case No. 03 C 2232.

## LEGAL STANDARD

The Court reviews the bankruptcy court's factual determination and application of legal

-5-

standards to a particular set of facts for clear error, *McFarlane v. Life Ins. Co. of N. Am.*, 999 F.2d 266, 267 (7th Cir. 1993), and mixed questions of law and fact *de novo. In re Ratner*, 132 B.R. 728, 730 (N.D. Ill. 1991).

> A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . If the bankruptcy court's account of the evidence is plausible, a reviewing court may not reverse even if it would have weighed the evidence differently as trier of fact.

*SK-Palladin Partners, L.P. v. Platinum Entm't, Inc.*, No. 01 C 7202, 2001 WL 1593154, at *3 (N.D. Ill. Dec. 13, 2001).

Factual findings, such as the credibility of witnesses, are reviewed for clear error only. *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 995 (7th Cir. 1989). This standard is expressly set forth in Bankruptcy Rule 8013, which states:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013.

"[W]hen an agreement has been approved by the [bankruptcy] court, it will not be reversed on appeal absent plain error or an abuse of discretion." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979). "Under [the abuse of discretion] standard, the relevant inquiry is not how this court would have ruled . . . but[,] instead[,] is 'whether *any* reasonable person could agree with the [bankruptcy] court.'" *Peate v. McCann*, 294 F.3d 879, 884 (7th Cir. 2002) (quoting *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984)).

## DISCUSSION

The Court must first determine whether it has jurisdiction over this appeal. Section 158 of

Title 28 provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals

from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). An order is final if it "'ends the

litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Carlson*

*v. Brandt*, Nos. 97 C 2165, 96 B 9606, 97 C 3630, 1997 WL 5354500, at *3 (N.D. Ill. Aug. 22,

1997). In bankruptcy proceedings, the reviewing courts look at the finality of an order with a

"relaxed eye" and interpret the finality requirement more liberally under § 158 than under 28 U.S.C.

§ 1291. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1298 (7th Cir. 1997).

> Even without a formal termination of the case, a bankruptcy court's order is final and
> appealable if it (1) "resolves all contested issues on the merits and leaves only the
> distribution of the estate assets to be completed," *In re Wade*, 991 F.2d 402, 406 (7th
> Cir. 1992) . . . ; (2) "ultimately determine[s] a creditor's position in the bankruptcy
> proceeding, even though the administration of the debtor's estate continues," *In re
> Forty-Eight Insulations*, 115 F.3d [at 1298] . . . ; or (3) "mark[s] the conclusion of
> what, but for the bankruptcy, would be the equivalent of a stand-alone suit" by or
> against the trustee. *In re Klein*, 940 F.2d 1075, 1077 (7th Cir. 1991) . . . .

*Carlson*, 1997 WL 534500, at *3.

Based on the above standard, the February 7th, April 16th, and April 18th Orders are not

final and appealable orders. The Orders fail to meet the elements of the above standard: (1) they

have not resolved all contested issues on the merits and will not lead to a final distribution of assets;

(2) the February 7th, April 16th, and April 18th Orders have not ultimately determined Appellants'

positions in the bankruptcy proceeding – the February 7th, April 16th, and April 18th Orders do not

dispose of the leases but, rather, merely extend the time in which United can decide whether to

perform under the leases and cure all defects; and (3) the February 7th, April 16th, and April 18th

Orders do not mark the conclusion of the equivalent of a stand-alone suit – the decision whether or not to extend a deadline is not an issue that would form the basis of an independent lawsuit against United.

Section 158 also provides district courts with discretion to hear appeals "from other interlocutory orders and decrees." 11 U.S.C. § 158(a)(3). Courts usually use the standards set forth in 28 U.S.C. § 1292(b) in determining whether to exercise their discretion under § 158(a)(3). *Carlson*, 1997 WL 534500, at *6. Section 1292(b) provides for appellate review of orders that are not final when "the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." "Generally speaking, leave to appeal an interlocutory order will not be granted 'absent exceptional circumstances.'" *In re Pullman Construction Indus., Inc.*, 143 B.R. 497, 498 (N.D. Ill. 1992) (quoting *Escondido Mission Village L.P. v. Best Prods. Co.*, 137 B.R. 114, 116 (S.D.N.Y. 1992)).

The Appellants have not identified any "exceptional circumstances" that would justify an exercise of jurisdiction over the bankruptcy court's interlocutory order or that an exercise of jurisdiction would materially advance the ultimate termination of the litigation in the bankruptcy court. A prompt decision by this Court would not save the parties much time and expense and would not prevent "some irreparable harm" to the Appellants. *See In re Huff*, 61 B.R. 678, 683 (N.D. Ill. 1986). The bankruptcy court granted United's requested modification in the approval process for § 1110(b) stipulations, reasoning that there would be no significant harm to any parties who claimed an interest in the aircraft subject to § 1110(b) stipulations because those parties could object to any such stipulation after it had been filed. The order adequately protects the Appellants' interests and

rights in the subject aircraft during the bankruptcy proceedings. Therefore, the February 7th, April 16th, and April 18th Orders are not appealable under § 158(a)(3).

Lastly, the Appellants argue that the February 7th, April 16th, and April 18th Orders are final for purposes of this consolidated appeal under the collateral order doctrine.

Under the collateral order doctrine, orders are reviewable that (1) conclusively determine a disputed question, (2) are entirely separate from the merits of the action, (3) are effectively unreviewable on appeal from a final judgment, and (4) are too important to be denied review. *See Trustee of Jartran, Inc. v. Winston & Strawn*, 208 B.R. 898, 901 (N.D. Ill. 1997) (*Jartran*). This exception is only appropriate for a small class of prejudgment orders. *See Jartran*, 208 B.R. at 901-02.

The Appellants make the broad statement that the February 7th, April 16th, and April 18th Orders meet each of the elements of the exception but fails to provide any analysis. The Appellants fail to cite one case that reviewed the appealability of a decision to seal records. Of the nineteen cases cited by the Appellants on this issue, eighteen are bankruptcy court decisions and one is a district court opinion for the United States District Court of New York that does not address the issue. The February 7th, April 16th, and April 18th Orders at issue do not fall into the small class of orders of the collateral order exception. The February 7th, April 16th, and April 18th Orders are not effectively unreviewable on appeal from a final judgment and are not too important to be denied review. As stated above, the Appellants' rights and interests are adequately protected by the February 7th, April 16th, and April 18th Orders.

## CONCLUSION

Based on the foregoing, the February 7, April 16, and April 18, 2003 Orders of the

bankruptcy court are not appealable; and, therefore, these appeals are dismissed.

**IT IS SO ORDERED.**

Date: _September 11, 2003_

_____
John W. Darrah, Judge
United States District Court